UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAFAEL MERCEDES-VALDEZ,

               Petitioner,

   -v-

UNITED STATES OF AMERICA,

               Respondent.

No. 15-cv-1042 (RJS)
<u>OPINION AND ORDER</u>

---

UNITED STATES OF AMERICA

   -v-

RAFAEL MERCEDES-VALDEZ,

               Defendant.

No. 08-cr-1137-1 (RJS)
<u>OPINION AND ORDER</u>

---

RICHARD J. SULLIVAN, District Judge:

      Petitioner Rafael Mercedes-Valdez ("Petitioner"), who is incarcerated and proceeds *pro se*, brings this petition for the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2255 (the "Petition"), challenging his conviction and sentence on the grounds that:  (1) his attorney provided ineffective assistance of counsel in connection with his guilty plea, and (2) his rights under the United States Constitution were violated when he was arrested and interrogated in the Dominican Republic in October 2008.  (Doc. No. 181 ("Pet.").)  For the reasons set forth below, the Petition is denied.

## I. BACKGROUND

      From 2005 through 2009, the Drug Enforcement Administration ("DEA"), along with law enforcement officers in the Dominican Republic, conducted an investigation into drug trafficking

and money laundering in the United States and the Dominican Republic.[1]  This investigation revealed that Petitioner was the principal leader of a money laundering organization responsible for laundering at least $400 million in criminally derived proceeds.  (August 24, 2011 Transcript ("Sentencing Tr.") at 32:21–94:25.)  In exchange for a percentage of each transaction, Petitioner "transferred millions of dollars in narcotics proceeds from the Dominican Republic through international banks, including banks in the United States and China, to drug traffickers in Central and South America" and "orchestrat[ed] bulk cash transfers of narcotics proceeds in New York City and Miami involving a total of approximately $10 million." *Valdez*, 522 F. App'x at 28.

On October 30, 2008, Petitioner was arrested in the Dominican Republic by Dominican law enforcement agents (the "Santo Domingo Arrest").  (Sentencing Tr. 25:20–25, 55:6–14, 69:1–12.)  Dominican officials thereafter informed agents with the DEA stationed in the Dominican Republic that Petitioner was in their custody.  (*Id.* at 27:19–24, 72:15–23.)  That same day, a group of DEA agents, including DEA Special Agent Jesus Gonzalez, interviewed Petitioner at the United States Embassy in Santo Domingo.  Prior to the start of their interrogation, the agents advised Petitioner of his *Miranda* rights in Spanish and also gave Petitioner a copy of DEA form 13A, which set forth his *Miranda* rights in Spanish.  (*Id.* at 29:24–30:6.)  Petitioner stated that he understood his *Miranda* rights and signed the DEA 13A form indicating that he waived them.  (*Id.* at 30:6–8, 30:17–31:22.)  During the ensuing interview, Petitioner admitted to being involved for

---

[1] Unless otherwise indicated, citations to docketed items refer to those materials that appear in Petitioner's criminal case, *United States v. Mercedes-Valdez*, No. 08-cr-1137-1 (RJS).  However, where appropriate, the Court also cites the Second Circuit's summary order affirming Petitioner's conviction, *United States v. Valdez*, 522 F. App'x 25, 28 (2d Cir. 2013), as well as material from Petitioner's civil case, *Mercedes-Valdez v. United States*, No. 15-cv-1042 (RJS).  In ruling on the Petition, the Court has also considered Petitioner's Memorandum of Law in support of the Petition (No. 15-cv-1042, Doc. No. 2 ("Mem.")) the government's response, dated May 22, 2015 (No. 15-cv-1042, Doc. No. 8), Petitioner's reply, dated August 3, 2015 (No. 15-cv-1042, Doc. No. 15 ("Reply")), and Petitioner's letter supplementing his arguments regarding his Fourth and Fifth Amendment claims, which was received on February 2, 2016 (No. 15-cv-1042, Doc. No. 17).

nearly two decades in a massive money laundering conspiracy involving approximately two billion dollars (the "Santo Domingo Confession"). (*Id.* at 33:2–37:15, 38:17–41:3.) After the interview, Petitioner left the DEA agents' custody and was returned to the custody of Dominican officials. (*Id.* at 37:17–21.)

On November 19, 2008, a grand jury in the United States District Court for the Southern District of New York issued an indictment charging Petitioner and twelve associates with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(I). (Doc. No. 1.) That same day, a warrant was issued for Petitioner's arrest. (Doc. No. 5.) In the meantime, Petitioner remained in the Dominican Republic, where he initially cooperated with U.S. law enforcement. However, by the summer of 2009, DEA agents concluded that Petitioner was no longer a reliable confidential source, in part because of his continuing illegal activities, which he failed to disclose to law enforcement. (*Id.* at 43:13–16.) On August 31, 2009, Petitioner agreed to travel to Miami with DEA agents, who eventually placed him under arrest pursuant to the warrant issued in the Southern District of New York. (*Id.* at 44:18–47:24.) Petitioner was thereafter transported to this district for prosecution.

On December 28, 2009, the government submitted a letter to Petitioner's counsel, setting forth the government's view that, in the event Petitioner pleaded guilty, his recommended sentence under the United States Sentencing Guidelines (the "Guidelines") would exceed the 20-year maximum term of imprisonment permitted for Count One of the indictment. (No. 15-cv-1042, Doc. No. 8-1 (the "*Pimentel* Letter").)[2] The government also made clear in its *Pimentel* Letter that

---

[2] "A *Pimentel* letter generally refers to an informational letter from the government containing an estimate of a defendant's likely sentence under the Sentencing Guidelines. It is often relied upon by defendants in entering guilty pleas." *United States v. Tulsiram*, 815 F.3d 114, 116 (2d Cir. 2016) (brackets and alterations omitted).

it "[did] not and [could not] bind the Court" and that the government could change its Guidelines estimate at any time prior to sentencing.  (*Id.* at 3.)

On January 14, 2010, Petitioner pleaded guilty to conspiracy to commit money laundering. (No. 15-cv-1042, Doc. No. 8-2 ("Plea Tr.").)  Before accepting the guilty plea, the Court asked Petitioner a series of questions under oath, at which time Petitioner stated, among other things, that he:  (1) was informed by his attorney of the consequences of pleading guilty (*id.* at 7:1–18); (2) was satisfied with his attorney's representation (*id.*); (3) understood the rights he was giving up by pleading guilty, including the right to object to the admissibility of evidence introduced by the government at trial (*id.* at 7:19–15:10); (4) had read and understood the Indictment (*id.* at 15:11–16:4); (5) was aware of the maximum applicable penalties of the offense to which he was pleading (*id.* at 17:24–18:1); (6) had reviewed a translation of the *Pimentel* Letter (*id.* at 22:19–24:24); (7) had not been promised what his sentence would be (*id.* at 27:1–3); and (8) was pleading guilty of his own free will (*id.* at 27:4–6).  Significantly, Petitioner also attested to understanding how the Guidelines would be used at sentencing, that the Guidelines were purely advisory, and that the Court was "[f]ree to go higher . . . or lower than" the Guidelines range (*id.* at 21:4–24:24, 25:20–22).  Petitioner also described his involvement in a massive multi-national money laundering conspiracy, which established the factual basis for his guilty plea.  (*Id.* at 28:12–34:7).

On April 5, 2011, the Court granted Petitioner's request for new counsel, relieving attorney Edward D. Wilford and appointing attorney Steven R. Kartagener pursuant to the Criminal Justice Act.  On April 29, 2011, Defendant moved to withdraw his guilty plea (Doc. No. 121), and after briefly changing his mind, Petitioner moved once again to withdraw his guilty plea on July 27, 2011 (Doc. No. 137).  In the interim, Petitioner submitted a letters to the Court on June 30, 2011 and July 6, 2011, in which he:  (1) requested a *Fatico* hearing with respect to the amount of

laundered funds to be considered as relevant conduct at sentencing, and (2) requested to proceed *pro se*. (Doc. No. 131.)[3]

On August 24, 2011, the Court conducted a brief examination and confirmed that Petitioner still wished to proceed *pro se*. (Sentencing Tr. 5:11–6:1.) After granting Petitioner's request, the Court then heard argument on Petitioner's motion to withdraw his guilty plea, ultimately finding that Petitioner had failed to present any "fair and just reason" to withdraw his guilty plea; accordingly, the Court denied Petitioner's motion. (*Id.* at 12:6–22, 16:22–17:4 (citing *United States v. Rosen*, 409 F.3d 535, 545 (2d Cir. 2005), and *United States v. Schmidt*, 373 F.3d 100, 102–03 (2d Cir. 2004)). The Court then held a *Fatico* hearing, at which Agent Gonzalez testified regarding Petitioner's Santo Domingo Confession in October 2008 and his eventual arrest in the United States. The Court also heard testimony from Petitioner and received documentary evidence.

At the close of the *Fatico* hearing, the Court found by a preponderance of the evidence that Petitioner knowingly and voluntarily waived his *Miranda* rights before the Santo Domingo Confession and that his statements were thus admissible. (Sentencing Tr. 93:23–94:2.) After weighing this testimony and the other evidence presented at the *Fatico* hearing, the Court also found that the government had established by preponderance of the evidence that the amount of money laundered by Petitioner was more than $400 million, thus warranting a 30-level enhancement from Petitioner's base offense level of eight under the Guidelines pursuant to U.S.S.G. §§ 2B1.1(b)(1)(P) and 2S1.1. (*Id.* at 94:16–18, 105:3–11.) The Court also found that a six-level enhancement was warranted because Defendant knew that the laundered funds were the proceeds of illegal narcotics trafficking pursuant to U.S.S.G. § 2S1.1(b)(1). (*Id.* at 105:12–14.)

---

[3] "A '*Fatico*' hearing is a sentencing hearing at which the prosecution and the defense may introduce evidence relating to the appropriate sentence." *United States v. Lohan*, 945 F.2d 1214, 1216 (2d Cir. 1991).

Next, the Court found that a four-level increase pursuant to U.S.S.G. § 2S1.1(b)(2)(C) was appropriate because Defendant had been in the business of laundering funds.  (*Id.* at 105:15–17.) The Court also found that an enhancement of four levels pursuant to U.S.S.G. § 3B1.1 was appropriate because of Defendant's role as "organizer and leader of criminal activity that involved five or more participants."  (*Id.* at 105:23–106:7.)  Notwithstanding the fact that Defendant had originally pleaded guilty, the Court declined to reduce Petitioner's offense level by three for acceptance of responsibility under U.S.S.G. § 3E1.1 in light of Petitioner's "assertions of innocence," "attempt to evade responsibility on the basis of his allegedly improper arrest and transportation to the United States," and his allegation that he had been coerced into pleading guilty, among other things.  (*Id.* at 106:8–108:6 (citing *United States v. Cox*, 299 F.3d 143, 149 (2d Cir. 2002)).

Ultimately, the Court concluded that Petitioner's total offense level was 52 and that Defendant had a criminal history category of I, which would ordinarily result in a Guidelines range of life imprisonment.  (*Id.* at 111:14–17.)  However, because Petitioner's applicable Guidelines range exceeded the statutory maximum sentence of twenty years, the Court determined that Petitioner's Guidelines range was twenty years pursuant to U.S.S.G. § 5G1.1(a).  (*Id.* at 112:14–22.)  After considering other relevant factors, including Petitioner's personal history, the facts and circumstances of the offense, the need for deterrence, the need to avoid unwarranted sentencing disparities among similarly situated defendants, and the seriousness of Petitioner's crime, the Court concluded that a sentence of twenty years imprisonment was sufficient but not greater than necessary to meet the objectives of sentencing set forth in 18 U.S.C. § 3553.  (Sentencing Tr. 112:20–113:10; *see also* Doc. No. 143.)  The Court also issued a $2 billion forfeiture order

pursuant to 18 U.S.C. § 981(a)(1)(A) and a special assessment of $100.  (Sentencing Tr. 128:10–12; Doc. No. 144.)

Petitioner, by then represented by appellate counsel Marshall A. Mintz, appealed his conviction and sentence to the Second Circuit, arguing that the Court had erred in accepting his guilty plea, denying his motion to withdraw his guilty plea, imposing a 20-year prison sentence, and in imposing a $2 billion forfeiture order.  *Valdez*, 522 F. App'x at 28.  On May 23, 2013, the Court of Appeals rejected all of Petitioner's arguments and affirmed his conviction and sentence. *Id.* at 29–30.  Specifically, the Second Circuit concluded that:  (1) based on Petitioner's admission at the January 2010 plea hearing to "participation in a massive, diverse, and transnational money laundering scheme, the district court could reasonably infer that [Petitioner] acted with the requisite intent to conceal the nature, location, source, ownership, or control of the narcotics proceeds"; (2) Petitioner's "conclusory assertions of legal innocence" were "insufficient to support his motion to withdraw his guilty plea" in light of the admissions made under oath at the plea hearing and his 18-month delay in moving to withdraw his guilty plea; (3) the Court's sentence was not procedurally unreasonable, and (4) the Court's imposition of a $2 billion forfeiture order was not erroneous.  *Id.* at 27–33.

On February 9, 2015, Petitioner filed the instant Petition, in which he argues that:  (1) his first attorney, Mr. Wilford, was ineffective for failing to advise him of the consequences of his guilty plea prior to the January 2010 hearing, and (2) the statements he made in the Santo Domingo Confession were inadmissible because they were taken in violation of the United States Constitution.  (Mem. 1–2.)  Although the Petition was fully briefed as of August 3, 2015 (No. 15-cv-1042, Doc. No. 15),  Petitioner filed a supplemental letter, received on February 2, 2016, in

which he points the Court to additional authorities that he argues support the Petition (No. 15-cv-1042, Doc. No. 17).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Legal Standard

Section 2255 enables a prisoner who was sentenced by a federal court to petition that court to vacate, set aside, or correct the sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Relief under Section 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (citation and internal quotation marks omitted).  "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation and internal quotation marks omitted).  A claim of ineffective assistance of counsel, however, is one permissible basis for bringing a Section 2255 petition.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant's right to the assistance of counsel.  U.S. Const. amend. VI.  When challenging the effectiveness of counsel's assistance, a party must demonstrate that (1) counsel's representation "fell below an objective standard of reasonableness" measured against "prevailing professional norms," and (2) this "deficient performance prejudiced the defense" in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).  A court must reject a petitioner's ineffective assistance of counsel claim if it fails to meet either prong.  *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).

With respect to *Strickland*'s first prong, a court "must judge [counsel's] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices."  *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690).  The court starts from the strong presumption that counsel's conduct fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  "Actions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel."  *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009) (citing *Strickland*, 466 U.S. at 690–91).  Because there are many different ways to provide effective assistance in any given case, and "[e]ven the best criminal defense attorneys would not defend a particular client the same way," there is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Strickland*, 466 U.S. at 689–90.

With respect to *Strickland*'s second prong, a petitioner who has pleaded guilty "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  In addition, a petitioner may show prejudice by demonstrating that he would have received and accepted a guilty plea with a lower sentence but for counsel's errors.  *See Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376, 1391 (2012) (finding prejudice where the defendant showed that, but for counsel's deficient performance, there was a reasonable probability that the court would have accepted a guilty plea with a sentence less than a third of the length of

the sentence he received after trial).  In the plea bargaining context, a defendant must show that "the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S. Ct. at 1384.  And as a general rule, "defense counsel has the duty to communicate formal [plea] offers from the prosecution." *Frye*, 132 S. Ct. at 1408 (finding prejudice where a defendant's counsel allowed a favorable plea offer to expire without advising the defendant that the offer had been made).

Finally, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings," since "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).  Any "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* at 74.

### B.  Discussion

Petitioner argues that Mr. Wilford rendered ineffective assistance of counsel in connection with Petitioner's guilty plea.  At the outset, the Court notes that at the time of his guilty plea hearing, Petitioner attested to being satisfied with his attorney's representation.  (Plea Tr. 7:1–18.) Writing more than five years after the plea hearing, Petitioner now asserts that defense counsel was deficient because Mr. Wilford failed to inform him that "there was virtually no chance of the Court imposing a sentence" of fewer than twenty years imprisonment, and therefore, Petitioner would "receive absolutely no benefit from pleading guilty."  (Mem. 10; *see also* Reply 2–4.) Petitioner appears to premise this argument on the fact that the government estimated that his recommended sentence under the Guidelines would be twenty years in the *Pimentel* Letter and

suggests that the Court was bound to impose a sentence based on the government's Guidelines calculation. (Mem. 9.)

Petitioner's argument rests on several fundamental misapprehensions of the law.  First, as the Court made clear at the guilty plea hearing, *Pimentel* letters are not binding on the Court, or even, for that matter, on the government.  *See United States v. Pimentel*, 932 F.2d 1029, 1033–34 (2d Cir. 1991).  Indeed, the government made clear in the *Pimentel* Letter that it could not legally bind the Court and that the government retained discretion to change its Guidelines estimate. (*Pimentel* Letter at 3.)  It is also well settled that the Guidelines are "advisory."  *United States v. Booker*, 543 U.S. 220, 245 (2005).  In other words, "[s]entencing courts are not to 'presume that the Guidelines range is reasonable,' and instead they 'must make an individualized assessment based on the facts presented.'"  *United States v. Thavaraja*, 740 F.3d 253, 259 (2d Cir. 2014) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)).  As a result, the advice that Petitioner contends *should* have been provided by counsel – that "there was virtually no chance of the Court imposing a sentence other than" twenty years imprisonment (Mem. 10) – would have been inaccurate as a matter of law, since the Court retained the authority to sentence Petitioner below the advisory Guidelines range.  Indeed, the Court made this very point at the Plea Hearing and advised Petitioner that the Guidelines were purely advisory, and that the Court was "[f]ree to go . . . lower than" the Guidelines range.  (Plea Tr. 21:4–24:24, 25:20–22.)  The fact that the Court eventually chose to sentence Petitioner to twenty years imprisonment – following multiple attempts by Petitioner to withdraw his guilty plea and the Court's finding that Petitioner had masterminded a money laundering conspiracy involving over $400 million – does not alter the fact that the Court could have sentenced Petitioner to a sentence of less than 20 years – and might have done so but for Petitioner's post-plea conduct.  (Sent. Tr. 107:23–108:5, 122:25–123:12, 124:12–

25); *see also Strickland*, 466 U.S. at 689 (instructing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight"). To the extent that Petitioner faults Mr. Wilford for not predicting that the Court would, in fact, impose a twenty-year sentence, the law is clear that "[i]naccurate predictions and mistaken predictions by defense counsel do not constitute ineffective assistance of counsel." *Chabus v. United States*, No. 05-cr-681 (CM), 2012 WL 601069, at *3 (S.D.N.Y. Feb. 23, 2012) (citing *United States v. Sweeney*, 878 F.2d 68 (2d Cir. 1989)). Petitioner has therefore failed to rebut the strong presumption that Mr. Wilford's representation fell "within the wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689.

Even assuming Mr. Wilford somehow failed to sufficiently warn Petitioner of the consequences of his guilty plea, Petitioner cannot establish prejudice. At the Plea Hearing, Petitioner attested to understanding that: (1) the Court was not required to accept the government's Guidelines calculation in the *Pimentel* letter and would make its own determination of the applicable Guidelines at Petitioner's sentencing hearing; (2) the Guidelines were merely advisory; (3) the Court was free to depart from the Guidelines range; and (4) the Court would consider the other objectives of sentencing set forth under 18 U.S.C. § 3553, including the need to "fashion a sentence that reflects the seriousness of that offense" and the specific facts and circumstances of the case. (Plea Tr. at 21:4–24:24, 25:20–22.) Petitioner also confirmed that he had not been promised what his sentence would be. (*Id.* at 27:1–3.) In other words, to whatever extent defense counsel failed to adequately warn Petitioner of the ramifications of his guilty plea and the role of the Guidelines in determining his sentence, the Court rectified those deficiencies through its colloquy with Petitioner at the plea hearing. *See Marte v. United States*, No. 02-cr-1490 (KMW), 2012 WL 2953723, at *6 (S.D.N.Y. July 20, 2012) ("Petitioner cannot show prejudice even if

counsel's representations were deficient because the Court advised him about the consequences of his plea before accepting that plea."); *accord Ioulevitch v. United States*, No. 10-cr-915 (PAC), 2014 WL 2158435, at *7 (S.D.N.Y. May 22, 2014); *Diaz v. Mantello*, 115 F. Supp. 2d 411, 422 (S.D.N.Y. 2000).  Petitioner therefore cannot establish the reasonable probability that but for any alleged error by Mr. Wilford, Petitioner "would not have pleaded guilty and would have insisted on going to trial."  *Hill*, 474 U.S. at 59.

### III.  PETITIONER'S OCTOBER 2008 SANTO DOMINGO ARREST AND CONFESSION

Petitioner fares no better with his second argument, in which he asserts that his Santo Domingo Confession was illegally procured because:  (1) Dominican authorities failed to obtain a valid warrant in October 2008 before arresting him; (2) Dominican authorities violated Rule 5 of the Federal Rules of Criminal Procedure because they did not take him before a magistrate judge for an initial appearance; and (3) Petitioner did not knowingly and voluntarily waive his *Miranda* rights prior to making the Santo Domingo Confession to DEA agents.  (*Id.* at 2, 12–18.)  Petitioner also appears to argue that Mr. Wilford's failure to bring a pre-trial motion seeking suppression of the Santo Domingo Confession prior to Petitioner's guilty plea and his appellate counsel's decision not to raise these issues before the Second Circuit amounted to ineffective assistance.  (Mem. 2; Pet. 4); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam) (recognizing that courts should liberally construe *pro se* submissions).

At the outset, Petitioner is barred from bringing claims based on alleged constitutional deprivations that occurred prior to his January 14, 2010 plea allocution.  "[I]n order to reserve an issue for appeal after a guilty plea" under Rule 11(a)(2) of the Federal Rules of Criminal Procedure, a defendant must obtain the approval of the court and the consent of the government, and he must reserve the right to appeal in writing."  *United States v. Rubin*, 743 F.3d 31, 35 (2d Cir. 2014)

(internal quotation marks omitted).  "Absent such a reservation, a defendant who knowingly and voluntarily enters a guilty plea waives *all non-jurisdictional defects* in the prior proceedings."  *Id.*; *see also Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").  Because Petitioner failed to obtain such a reservation and because his arguments are not jurisdictional, they are barred.

Petitioner's arguments also fail on the merits.  Even assuming, *arguendo*, that Dominican officials failed to obtain a proper warrant under Dominican law in October 2008, it is well settled that "United States authorities [are] 'entitled to rely on [a foreign] government's interpretation and enforcement of its own laws.'"  *United States v. Hertular*, 562 F.3d 433, 450 (2d Cir. 2009) (quoting *United States v. Lira*, 515 F.2d 68, 71–72 (2d Cir. 1975); *accord United States v. Yousef*, 327 F.3d 56, 142 (2d Cir. 2003).  Accordingly, the exclusionary rule generally "does not apply to arrests and searches made by foreign authorities on their home territory and in the enforcement of foreign law."  *United States v. Getto*, No. 09-cr-667 (HB), 2010 WL 3467860, at *2 (S.D.N.Y. Aug. 25, 2010) (quoting *Stowe v. Devoy*, 588 F.2d 336, 341 (2d Cir. 1978)); *see also United States v. Getto*, 729 F.3d 221, 230–31 (2d Cir. 2013) (noting that the "purpose of the exclusionary rule . . . is to inculcate a respect for the Constitution in the police of *our own nation*, and [courts] have seldom used it to bar foreign police work product because it has little if any deterrent effect upon foreign police" (internal citations, brackets, and quotation marks omitted)).  Although the Second Circuit has recognized limited exceptions to this general rule, such as when United States officials "control" or "direct" the foreign investigators and "intentionally seek[] to evade our Constitution," *Getto*, 729 F.3d at 233, Petitioner points to no evidence that would permit the Court

14

to reach such a conclusion with respect to the Santo Domingo Arrest.  In fact, Agent Gonzalez, whose testimony the Court credited at Petitioner's *Fatico* hearing, specifically testified that Dominican officials informed him that they arrested Petitioner pursuant to a warrant.  (Sentencing Tr. 25:20–25, 55:6–14, 69:1–12.)  It therefore follows that, even if Dominican officials did not obtain a warrant, Agent Gonzalez and his colleagues were not aware of that fact and in any event did not "control" or "direct" the Dominican officials' decision to act in violation of Dominican law, much less to evade any of Petitioner's rights under the United States Constitution.  *See Getto*, 729 F.3d at 233 (recognizing that the "purpose of deterrence is not served in instances where American law enforcement officers, not intentionally seeking to evade our Constitution, participate in a so-called 'joint venture' but do not direct or otherwise control the investigation.").

Petitioner's other arguments also lack merit.  Rule 5, which requires U.S. law enforcement officers to bring a defendant before a United States magistrate judge promptly following arrest, is entirely inapposite, since the Federal Rules of Criminal Procedure generally apply only to criminal cases brought in United States Courts, not to the local Dominican charges for which Petitioner was arrested in October 2008.  *See* Fed. R. Crim. P. 1.  As for Petitioner's statements to DEA agents at the U.S. Embassy, it is of course true that a "statement made by the accused during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused in fact knowingly and voluntarily waived [*Miranda*] rights when making the statement."  *United States v. Taylor*, 745 F.3d 15, 23 (2d Cir. 2014) (internal quotation marks omitted).  However, the Court has already concluded that Petitioner knowingly and voluntarily waived his *Miranda* rights prior to making the Santo Domingo Confession (Sentencing Tr. 93:23–94:2).  Accordingly, Petitioner fails to establish any basis for a motion to suppress his statements made during the Santo Domingo Confession.

15

Since Petitioner's arguments fail on the merits, it necessarily follows that his attorneys' decisions not to raise them prior to the guilty plea and on appeal were not objectively unreasonable measured against prevailing norms. *See United States v. Kirsch*, 54 F.3d 1062, 1071 (2d Cir. 1995) (Defense counsel's "failure to make a meritless argument does not rise to the level of ineffective assistance."). Moreover, Petitioner cannot show prejudice, since a motion to suppress would have been denied in any event.

## IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT the Petition is DENIED. In addition, because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *see also Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be undertaken in good faith, and, therefore, Petitioner may not proceed *in forma pauperis*.

The Clerk is respectfully directed to terminate the motions pending at docket numbers 181 and 193 in the criminal case, *United States v. Mercedes-Valdez*, No. 08-cr-1137-1 (RJS), and is respectfully directed to close the above-captioned civil case.

SO ORDERED.

Dated:     December 23, 2016
           New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/23/16

16